BRYANT BLIZZARD, plaintiff in error, *vs.* MARY E. NOSWORTHY *et al.*, defendants in error.

1. A refusal of an injunction does not bar the complainant from making a second application, when he presents new and additional matter discovered since the former hearing.

2. Though a deed be produced under notice, and inspected by the opposite party, he is not thereby deprived of any right to impeach the deed for fraud or other causes that may avoid it.

3. There was no abuse of discretion by the Chancellor in hearing the second application, and in granting the injunction, provided the same be construed as restraining the trial of the ejectment case until a final hearing of the bill, with the right of the parties to a trial of both cases together.

Injunction. Deeds. Ejectment. Production of papers. Before Judge BARTLETT. Baldwin county. At Chambers. February 26, 1874.

Mary E. Nosworthy and her husband, Daniel Nosworthy, filed their bill against Bryant Blizzard and Eliza F. Moran, making, substantially, the following case:

In the year 1853, William A. Moran died intestate, leaving a tract of land, unnecessary to be described, as a part of his estate. His heirs were his widow, the defendant, Eliza F. Moran, and two children, to-wit: James H. Moran and Mary E. Moran, now the complainant, Mary E. Nosworthy. The defendant, Eliza F. Moran, administered upon his estate. Though the estate was free from debt, and though no guardian had been appointed for said minor heirs, yet the said administratrix did, on the first Monday in March, 1860, procure an order from the Ordinary of the county of Baldwin, to sell all the lands of said intestate, and did advertise the same to be sold on the first Tuesday in May. No sale was made on that day, but, on the 10th of July following, said administratrix entered into this contract with the defendant, Blizzard:

" MILLEDGEVILLE, GEORGIA, 10th July, 1860.

" This is to show that Mrs. Eliza Moran and Bryant Blizzard have this day bargained, to-wit: Mrs. Moran, as administratrix, and by consent of the Ordinary, agrees to give the tract of land belonging to the estate of William Moran, and upon which Blizzard is now residing, and $150 00 besides, payable the 25th of December next, for a negro woman, Corinna, and her male child, about four years old, the title and health of said negroes he, Blizzard, warrants, and Mrs. Moran warrants and defends the title to the land, said land containing two hundred and eighty-five acres, more or less.

(Signed)                    "A. H. KENAN,
              "Attorney for Elizabeth Moran.
                          " B. BLIZZARD."

Said widow had never made any election of a child's part of said estate in lieu of dower, whereby her right to inherit any part thereof was barred.

Complainants charge that it was beyond the power of said administratrix to purchase slaves for said estate, or to pay her

debts with the lands thereof. On April 25th, 1861, said administratrix did privately execute a deed conveying said lands to said Blizzard, reciting therein no public sale of the same, but acknowledging the receipt of $1,550 00 as a consideration therefor. Complainants deny that any consideration was paid, except the slaves aforesaid.

On January 19th, 1872, complainants and James H. Moran instituted an action of ejectment against said Blizzard for said land. On December 25th, 1872, said James H. died intestate, leaving his mother, Eliza F. Moran, and his sister, the complainant, Mary E. Nosworthy, his only heirs-at-law. The action then proceeded in the name of complainants for three-fourths of said property. At the August adjourned term, 1873, of the Superior Court of Baldwin county, said case came on for trial. The deed of April 25th, 1861, heretofore referred to, was produced by the defendant under notice from the plaintiffs, who believed it to be forged. It was inspected by the plaintiffs, and thereby became admissible in evidence, notwithstanding no public sale was shown, under the stern rule of law laid down in 18 *Georgia Reports*, 609. It was read to the jury. A verdict was rendered for the defendant, which, on motion, was set aside. Complainants only became acquainted with the facts as to said contract of July 10th, 1860, and as to the consideration of said deed, since the aforesaid trial.

Pray that the defendant, Blizzard, may be decreed to deliver up the aforesaid deed, to be canceled as to three-fourths of said land, or that said deed be reformed so as to convey only said one-fourth interest to said defendant; that an equitable partition may be made of said land; that said defendant, in the meantime, be enjoined from introducing said deed in evidence in the aforesaid case, or from setting up any rights thereunder.

Blizzard answered, substantially, as follows:

1st. Denies positively all charges of fraud.

2d. Denies that defendant, Blizzard, and Eliza Moran, administratrix, ever exchanged land for slaves.

3d. Denies positively, that said paper of July 10, 1860, was the beginning of the trade, or was the trade between him and the administratrix for said land; but alleges that it was the end of the matter, and that it was, in truth, not a bargain for the land and slaves, privately, but a full receipt of payment of the price of said land—$1,400 00, as bid off at previous public sale, of May, 1860, for which price—$1,400 00 in money, on seven years' credit, with interest, running and payable yearly—defendant had given his promissory note, with privilege to pay sooner, and get title for the land at payment, and that two months after the public sale of the land, on May sale-day, 1860, to-wit: on July 10, 1860, a new transaction sprang up between the parties, whereby defendant, Blizzard, then, for the first time, sold two slaves to said Eliza Moran, administratrix, for a larger price than the land had brought at May sale, and said administratrix paid him for his two slaves, not in land, but in his own promissory note for $1,400 00, and interest accrued, and for the excess of price of the slaves over the said land-note, she, said Eliza, then gave defendant her own promissory note. Exhibits, in support thereof, viz:

1st. Sworn copy, from Gazette, of notice of intention of administratrix to apply for leave to sell.

2d. Certified copy of record of Ordinary, of March term, 1860, granting administratrix leave to sell said land.

3d. Sworn copy, from Gazette, of forty-days' notice of sale, for May sale-day, 1860.

4th. The two supporting affidavits of Standley and Simpson, deposing that they were present at the sale, and that it was a public sale, for $1,400 00, to Blizzard, on first Tuesday, etc.

5th. Certified record of Ordinary, showing the return of sale of the land by said administratrix to the Ordinary, August 6, 1860, and its approval, and order to record on September 3, 1860.

The case, thus presented, was heard on January 20th, 1874, and the injunction refused on the 30th of the same month.

The complainants then filed an amended bill by which they set up newly discovered facts, as follows:

They admit that there was a public sale of the property in dispute in May, 1860, and that it was bid off to the defendant, Blizzard, who was not present in person, but aver that said public sale was not *bona fide;* that it was a single bid, and nominal, and not for money, and only made to "perfect titles" to Blizzard, and so announced by the crier; that the defendant, Blizzard, and administratrix, Eliza Moran, had previously and illegally bargained with each other privately, through her attorney, Kenan, for an exchange of said land for Blizzard's two slaves, and exhibited, in that connection, a bill of sale, dated July 5, 1860, for said two slaves, at $1,552 00, made by Blizzard to the administratrix; and attached two affidavits from the same eye-witnesses of the public May sale, 1860—Standley and Simpson—deposing that it was announced that said public sale was to perfect titles, etc.

Blizzard again answered as follows:

1st. Denies that the amended bill shows any newly discovered facts material or sufficient to justify an injunction or interference by equity to stop him from reading to the jury his said title deed.

2d. Reaffirms his answer to the original bill.

3d. Denies all charges of fraud.

4th. Denies that the admitted public sale of May, 1860, was only nominal, or not *bona fide,* and only to perfect title; disclaims having any private title "to perfect;" claims under said "public sale" in good faith, and avers it was fairly and legally made by order of the Ordinary, granting leave to sell, and denies that he ever rented the land for 1859, or for any other time.

5th. Denies that there ever was any sale, or offer to sell, or wish to sell his two slaves prior to the public sale of said land; and avers that he purchased said land *bona fide,* at public sale of May, 1860, and never sold, or offered to sell, his slaves until two months thereafter—July 4th, 1860—and then sud-

denly sold them for $1,600 00, paid in his own note of $1,400 00, with interest, and in administratrix's note of $150.

6th. States that the administratrix and her family had for several years abandoned the land, which is a rude little farm, consisting of a log cabin and thirty-acre field; alleges that the administratrix was openly in the market, soliciting bidders; that he was willing to bid $1,400 00, and no more; and to catch his bid certain, and more if possible, administratrix got leave of Ordinary to sell said land, and did sell it publicly, May sale day, 1860, and *bona' fide;* and defendant would have missed the land if anybody had overbid his $1,400 00, for that was his highest figure, and a higher bidder would have got it on same terms of credit. Denies that she was bound to accept his intended bid of $1,400 00; his willingness to bid so much was made known to administratrix by him, and it was so high a bid, so much above all probable competition, and so satisfactory to administratrix, that it was agreed verbally between them in October, perhaps September, 1859, after fodder-pulling, and in the midst of cotton-picking time, that while she, administratrix, was getting ready for public sale of said land, defendant might enter thereon at end of year 1859, in advance of the public sale, which he did on 28th day of December, 1859; and afterwards, at May sale, 1860, he got the land at his bid of $1,400 00; but he disclaims ever having any title thereto by previous private agreement, and denies that administratrix was bound to accept his bid of $1,400 00, if she could get a better. Claims that if said agreement of October or September, 1859, be held to be a private sale of said land, then it is valid, by express statute, as it was prior to December 17th, 1859, but denies that he ever purchased said land privately.

7th. Five supporting affidavits annexed to this answer.

The defendant, Eliza F. Moran, answered, sustaining substantially all the allegations of the bill.

On February 26th, 1874, the Chancellor passed the following order:

"This cause having been heard on amended bill and an-

swer, after argument of counsel, it is ordered that the injunction prayed for be granted, and that defendant, Bryant Blizzard, be enjoined, in the penalty of $2,000 00, as prayed for in complainants' bill, from using as evidence the deed of April 25th, 1861, until final decree at the trial of said cause."

To this order the defendant, Blizzard, excepted.

WILLIAM McKINLEY, by Z. D. HARRISON, for plaintiff in error.

CRAWFORD & WILLIAMSON, for defendants.

TRIPPE, Judge.

1. There is no good legal reason why a complainant may not, after a refusal of an injunction by the Chancellor, make a second application, especially when he presents new and additional matter discovered since the former hearing. By analogy to the rule for granting new trials for newly discovered testimony, it would be but reasonable that a Chancellor could thus rehear a second application for injunction. A second injunction may be granted in the discretion of the Judge: New Code, 3223.

2. We presume, from the argument of counsel in this case, that complainant feared that unless an injunction could be obtained and a decree had, no attack could be made on the deed of the administratrix to Blizzard, from the fact that it had been produced on a former trial of the ejectment cause, inspected by the plaintiff, and used in evidence at that trial. This apprehension arises from a mistaken construction of the decision in *Wooten vs. Nall,* 18 *Georgia,* 609. The rule there stated is, that if a party calls for papers from the other side, and they are produced and inspected, they are then admissible as evidence for both parties, and on all subsequent trials. But neither that decision or any of the authorities cited, declare such papers conclusive evidence of the truth of what they contain, nor that the fact of their production and inspection precludes inquiry as to their validity. A notice

to produce a deed is often given for the purpose of proving it a forgery. All papers so produced and inspected by the party calling for them, are admissible in evidence without further proof as to execution, and for what they may be worth to the party introducing them, without any disability incurred by the one giving the notice, so as to prevent him from attacking them for fraud, or other cause, that may avoid them. They may thus become evidence, but not unimpeachable, conclusive evidence.

3. We do not think there was any abuse of discretion by the Judge in hearing the second application and granting the injunction, provided it be construed as restraining the trial of the ejectment cause, until a final hearing of the bill, with the right to the parties to a trial of both cases together. It would be highly unjust to the defendant in ejectment to deny him, by injunction, the right to use his deed, his only defense, perhaps, and still force him to trial. The difficulty seems to grow out of the form of the prayer, to-wit: it does not ask that the proceedings at law shall be stayed, but only that the defendant shall not use his deed on the trial thereof; and the order of the Chancellor is a grant of the prayer for injunction. We have no idea that the Judge intended that the action at law should be allowed to be forced to trial by complainant with the hands of defendant tied, so that his chief muniment of title could not be used by him. It was stated by counsel, in the argument, that a continuance of the ejectment case had been allowed, on account of the injunction. But as there seemed to be some apprehension on this point, and as the question was distinctly made, we have given the case such direction that no harm of that sort can result from the injunction.

Judgment affirmed.