Pearson *v.* Dailey.

JAMES D. PEARSON AND WIFE *v.* THOMAS DAILEY *et al.*

GUARDIAN AND WARD. *Assets from another State. Sureties on bond.* Where a guardian was appointed in this State for an infant resident, whose whole estate consisted of a fund in the hands of a guardian in another State, and a bond was executed in about double the value of that fund, and the guardian, upon the faith of the appointment and bond, applied for and received the fund through the probate court of the other State, and returned it to the county court appointing him as constituting the estate of his ward, it was held that the sureties were liable for the fund, the presumption being that they joined in the bond with knowledge of the facts.

FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

DEWITT & SHEPHERD for complainants.

P. A. BRAWNER and KEY & RICHMOND for defendants.

COOPER, J., delivered the opinion of the court.

Pearson and Lorena his wife filed this bill against Dailey as the guardian of Lorena, and the other defendants as liable upon the guardian's bond, for a settlement of the guardianship. Pending the litigation, Pearson and wife were divorced, and the suit was continued by the wife by next friend, she being yet an infant. The chancellor gave the complainant a decree against the defendants for the amount found to be due

from the guardian, and the representatives of one of the sureties appealed.

The complainant Lorena was in 1865, when a little infant, placed by her father in the custody of her aunt, who afterwards intermarried with the defendant Dailey. The father, daughter and aunt resided in Atlanta, Georgia. The father died in 1868. The aunt intermarried with Dailey in 1872, and the husband and wife moved to Chattanooga, bringing complainant with them. The complainant had an estate in Georgia of about $1,200 in money, and the probate court of that State at Atlanta had appointed one Waddail as guardian of complainant. Afterwards, Waddail resigned, and one Oliver was appointed in his place by the same court. In this state of affairs, in October, 1872, defendant Dailey was appointed guardian of complainant by the county court of Hamilton county in this State, and qualified as such by giving the usual guardian bond, in the penalty of $3,000, with Thad. Brew and John Costin as his sureties. The appellants are the heirs and personal representatives of Brew, who has died. When Dailey was appointed guardian, the ward had no estate in Tennessee, nor any estate at all except the fund in the hands of the guardian at Atlanta. Dailey took a certified copy of his appointment and bond as guardian, and presented them to the ordinary or probate judge at Atlanta, and was permitted to receive the funds in the hands of Oliver as guardian, for which he gave his receipt July -3, 1873. The receipt was entered of record in the probate court of Georgia, but by some oversight which

the probate judge, whose deposition is taken, cannot explain, the other papers were not recorded. On September 4, 1874, Dailey returned an inventory of his ward's estate to the county court of Hamilton county, in which he charged himself with the sum of $1,291.25, received from Oliver, the former guardian, the amount corresponding with his receipt. He never made any settlement as guardian, but was allowed by the chancellor the interest on the fund up to the marriage of the ward for her support. The defense relied on in the able argument submitted is that the sureties of the guardian are not liable for the fund received in the State of Georgia.

Stress is laid in the argument upon the irregularity of the proceedings of the probate court of Atlanta in making the transfer of the fund from the Georgia to the Tennessee guardian. It is urged that the effect of the irregularity is to make the trunsfer unlawful, and the possession of the defendant tortious, and that his sureties cannot be made liable for the guardian's tort. But we think this is an erroneous view of what was done. The defendant Dailey in good faith applied, credential in hand, for the fund, and the probate judge recognizing his right sanctioned the transfer. The error was in not spreading the papers and orders formally and regularly on the minutes of the court, a negligence on the part of the court, for which the defendant was not to blame, and which could, in no sense, affect the good faith of his conduct. Even if it be conceded that those proceedings would not protect the guardian and his sureties in Georgia from

liability to the ward, the result would not make the act of the Tennessee guardian wrongful on the one hand, nor protect him from liability to the ward also. The proceedings were not unlawful, but only informal.

Nor is there anything in the point taken that the domicile of the ward was properly in the State of Georgia, where the former guardian resided, and, therefore, the probate court of Hamilton county had no jurisdiction to appoint a guardian. *Prima facie,* the Georgia guardian and the Georgia officials concede that Dailey's wife had the legal custody of the ward, with the right to change the domicile. And even if the change were unauthorized, the county court in this State is expressly clothed with power to appoint a guardian "for every infant within its jurisdiction": Code, sec. 2493. And the supreme court of Georgia has said: "Where minor orphans are in fact resident in any State, the courts thereof have jurisdiction to appoint guardians of their persons while there, and of any property they may have or acquire there, whether the legal domicile of the minors is in such State or not": *Ross* v. *South Western Railroad Co.,* 50 Ga., 514.

The decisions of this State tend to limit the liability of the sureties of personal representatives to assets within this State: *Keaton* v. *Campbell,* 2 Hum., 224; *Snodgrass* v. *Snodgrass,* 1 Baxt., 157. The same rule was rather taken for granted than expressly held in regard to guardians: Case of *Andrews' Heirs,* 3 Hum., 592. But other authorities recognize the power of a guardian to act for his wards beyond the limits of the State in which he receives his appointment: *McClel-*

land v. McClelland, 7 Baxt., 210; Hickman v. Dudley, 2 Lea, 375. In the first of these cases, Judge Turney, who delivers the opinion of the court, says: "A guardian, unlike an administrator, has control of the entire estate, real and personal." And an authority is cited from a neighboring commonwealth, which seems to hold that property received from persons in another State will be covered by a guardian bond in that State: McDonald v. Meadows, 1 Metc. (Ky.), 507.

There are, however, some grave difficulties in holding, as a general proposition, that the sureties of a guardian, whose bond has been made with reference to the estate of the ward in this State, may also be held liable for an equal amount of assets brought from another State, thus covering the entire penalty, which is only required to be in double the value of the estate. "Every guardian appointed by court," says our statute, "shall, before acting, give bond with two or more sufficient sureties, in a penalty of double the value of the ward's estate, payable to the State, conditioned for the faithful discharge of his duty, which condition shall include every default which a guardian can commit in his office": Code, sec. 2494. The statute contemplates an inquiry into the estate of the ward with a view to determine the penalty of the bond, and call the attention of the sureties to the probable extent of their liability. And this gives us a clue to the solution of the case before us. The contemplated inquiry was doubtless made. It was ascertained that the ward's estate consisted of the sum of money in the hands of the guardian in Georgia,

about half the penalty of the bond, and at the same time it was disclosed that there was no estate in Tennessee. The guardian and his sureties entered into their obligations with a view to the particular fund afterwards obtained. There never was, nor could be any liability for assets then existing in Tennessee, for none existed. The law will presume that the bond was executed with special reference to the only estate owned by the ward, which was received on the faith of the bond, and returned to the county court as the estate for which the guardianship was created. Whatever may be the conclusion in other cases of assets brought from another State, in this case we feel no doubt that the sureties are liable upon the plain and obvious ground that the obligation was entered into with a special view to the liability.

There is no error in the chancellor's decree, and it is affirmed with costs.