EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.*
THORNTON *et al.*

Where an application to the secretary of State, under the act of 1893 (Acts 1893, p. 73) as amended, for a charter for a fraternal beneficiary order, in specifying the powers desired, recited powers to the incorporators to govern and control the corporation, and the secretary of State issued a certificate of incorporation purporting to confer such powers, they are not to be treated as conferring charter power on the petitioners for incorporation to control the internal affairs of the corporation after it has been organized.

(a) The action of the members of the Eminent Council, as complained of in the cross-petition, was authorized by the rules and regulations of the corporation.

(b) It was erroneous to grant the injunction as prayed for in the cross-petition, and also erroneous to refuse to enjoin the defendants.

MARCH 28, 1910. REHEARING DENIED APRIL 27, 1910.

Injunction. Before Judge Pendleton. Fulton superior court. December 17, 1909.

The case involves a contest over the right of J. B. Frost and oth-. ers, who are named as defendants, on the one hand, and L. T. Binford and others, who were made parties by the cross-petition, on the other hand, to participate in the control of a certain institution known as The Eminent Household of Columbian Woodmen. The petition was filed on the name of The Eminent Household of Columbian Woodmen, alleged to be a corporation, and sought to enjoin J. B. Frost and the other defendants from participating in the meetings of the officers of the corporation and from interfering with them in the management of its affairs. In the answer the defendants asserted a right to participate in the meetings of the officers of the corporation and to do all of the several things which the plaintiff sought to enjoin. By way of cross-petition the defendants alleged, that L. T. Binford, J. G. St. Amand, Peter F. Clarke, and P. E. Murray were not officers of the corporation, but they were assuming to act as such, and without authority had instituted the suit in the name of the corporation; that they were the real parties plaintiff; that under the charter of The Eminent Household of Columbian Woodmen, the power of making rules for the government of the internal affairs of the corporation remained in the original petitioners for charter until there should be a meeting of a certain executive body called the Eminent Household, in which such power should finally be vested; that there had been no meeting of the Eminent Household, and on December 11th, 13th, and 14th, 1909, the petitioners for charter held formal meetings, amended the by-laws in certain particulars, elected certain officers, made certain rules, and took other action, all of which had the effect of conferring upon the defendants authority to do all the things which were sought to be enjoined under the original petition, and to deny authority to L. T. Binford, J. G. St. Amand, Peter F. Clarke, and P. E. Murray to participate as officers in the management of the affairs of the corporation, or to attend the meetings of the subordinate bodies of the order. It was prayed, that L. T. Binford and the other persons named with him be made parties to the suit; that they be restrained and enjoined from in any wise interfering with the action taken by the incorporators, or which might be hereafter taken by the incorporators, or by the Emi-

nent Household, or from interfering in any way with the performance of the duties of such officers as may be hereafter chosen by the Eminent Household; that L. T. Binford be specially restrained and enjoined from assuming or attempting to perform any duties or functions of an officer under his claim of being Eminent Viceroy, and be restrained and enjoined from interfering in any way with J. B. Frost in the performance of his duties as Eminent Consul; and that J. G. St. Amand, Peter F. Clarke, and P. E. Murray be restrained and enjoined from attending the Eminent Household and undertaking to participate therein as members. Upon the hearing the judge passed an order declining to enjoin the defendants named in the original petition, but did grant "the injunction prayed for in the cross-petition, restraining L. T. Binford from assuming to exercise the duties of Viceroy or Eminent Consul, and restraining the other parties defendant to the cross-petition from interfering with the performance of the duties of Eminent Consul by J. B. Frost." The exception is to this ruling.

The petition alleged that the Eminent Household of Columbian Woodmen was a "fraternal order incorporated by the State of Georgia," and exhibited the "Articles of Incorporation;" also, that the charter was accepted and the Eminent Household of Columbian Woodmen "was duly organized." The answer admitted these allegations without qualification. The charter purported to have been issued by the secretary of State. The petition for charter was signed by seven persons, and specified, among other things, the business to be carried on to be that sort of insurance which is incident to fraternal beneficiary orders, national and international; also, certain provisions relative to the manner of organizing and conducting the affairs of the corporation; also, that the power to regulate conditions of membership, to provide plans for the organization of district lodges and other subordinate lodges, to adopt a constitution and by-laws, and to promote and supervise the general purposes of the order should be vested in a body to be composed of the officers of the corporation, delegates from subordinate bodies, and such other persons as the by-laws might provide, to be known as the Eminent Household; also, that the business of the order should be under the control of another body composed of the officers, directors, and managers of the order, to be known as the Eminent Council. Section eight of the petition for incorporation recited:

"The incorporators shall be authorized to perform all of the duties of the Eminent Household until the first session of the Eminent Household is held. They shall also be authorized to perform the duties of the Eminent Council until the same is organized." The certificate issued by the secretary of State recited the petition above mentioned, and that it was filed in pursuance of an act of the General Assembly of the State of Georgia, approved December 18th, 1893, and acts amendatory· thereof, and then proceeded: "Therefore the State of Georgia hereby grants unto the above-named persons, their successors and assigns, full authority by and under the said name of The Eminent Household of Columbian Woodmen, with its principal office in Fulton county, Georgia, to exercise the powers and privileges of a corporation for the purposes above stated, *according to the terms of their said petition,* subject to the provisions of the constitution of this State and all the laws, rules, and regulations governing insurance companies of force at the date of this certificate, or that may hereafter become of force either by constitutional or statute law, or by any rules or regulations of the insurance commissioner of the State, or otherwise, governing insurance companies in this State of the fraternal beneficiary order class." The date of the certificate by the secretary of State was August 24th, 1903. Three days later all of the petitioners for charter held a meeting and formally accepted the charter and appointed a committee to draft a "constitution and by-laws." No other meeting was held until September 22d, 1903. At this meeting all of the petitioners for charter were present, and adopted a constitution and by-laws. Another meeting of the incorporators was held September 24th, 1903, but no business was transacted. Another meeting was held by them on September 26th, at which officers were elected. The by-laws previously adopted provided, among other things, for seven officers, all of whom should be ex-officio members of the Eminent Council and also of the Eminent Household. At the meeting last mentioned each of the seven incorporators was elected to one of the seven offices, so that all of the incorporators had offices, and under the by-laws all were ex-officio members of the Eminent Household and likewise of the Eminent Council. After the meeting of September 26th, there was another meeting by the incorporators, as such, on October 28th, 1903, at which the only business transacted was the approval of the

minutes of the previous meetings of the incorporators.. After the
approval of the minutes the meeting was adjourned, "subject to
the call of the chairman." There was no other meeting of the in-
corporators, as such, attempted until December 11th, 1909, a period
of more than six years. Immediately after the election of officers
on September 26th, 1903, the Eminent Council organized, and
thereafter held regular meetings and operated the business of the
order in accordance with the "constitution and by-laws," as above
mentioned, and amendments thereafter made by the Eminent
Council. One of the original by-laws, after providing that in the
Eminent Household should be the chief legislative and judicial ad-
ministration and control of the affairs of the fraternity, and that
its jurisdiction and powers should be .supreme, declared, "That
said jurisdiction and powers shall be vested in the Eminent Coun-
cil when the Eminent Household is not in session." Another, after
providing how amendments could be made to the constitution and
by-laws by vote of subordinate or local bodies known as households,
also provided that "Amendment of this constitution can also be
made by the Eminent Council, or by two-thirds vote of the Emi-
nent Household." When business was commenced in 1903, and for
some time thereafter, the original incorporators continued as the
only officers of the order, being ex-officio members of the Eminent
Council. The constitution and by-laws were amended by them from
time to time. In course of time, one by one, the original officers
resigned, and new officers were formally elected in accordance with
the by-laws to fill vacancies, and this condition of affairs continued
until 1909, so that there were a number of changes in the personnel
of the officers and in the offices created. At the time the suit was
filed some of the incorporators had severed their connection alto-
gether with the corporation, and no one had continuously retained
the official position to which he was first elected by the incorpora-
tors. From 1903 to August, 1909, there had been no discord among
the officers, and the order had grown until it had acquired a mem-
bership approximating fifteen thousand and assets of the value of
about $250,000. This had been accomplished under the adminis-
tration of the Eminent Council, of which J. B. Frost was at all
times a leading member, though filling different offices at various
times. No meeting of the Eminent Household had ever been held,
but on the 2d day of August, 1909, the Eminent Council passed a

resolution calling for an election of delegates and a meeting of the Eminent Household. After that there were indications of discord among the officers. In the Eminent Council J. B. Frost was out of harmony with a majority of the officers, relatively to certain business affairs of the corporation, the time of meeting of the Eminent Household, and its membership. Pending this condition of affairs a call was issued by J. B. Frost and others of the incorporators on December 9th, 1909, for a meeting of the original incorporators to convene on December 11th, 1909. All of them were notified, but only five attended. At this meeting the minutes of the meeting of August 27th, 1903, were amended and approved, and the minutes of September 22d, 1903, were approved without amendment. Four of the seven original petitioners for incorporation who attended this meeting undertook, upon motion, to amend the constitution and by-laws substantially as hereinbefore pointed out.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff.

*Smith, Hastings & Ransom,* for defendants.

ATKINSON, J. The record is voluminous, but after careful consideration the view which we take of the case renders it unnecessary to state more of it than is expressed in the statement of facts. One question presented is: Did the petitioners for charter have the power, in December, 1909, to amend the by-laws and make rules relating to the control of the internal affairs of the order? If they did not, the action taken by them at that time was void, and the action of their appointees, the defendants whom the court refused to enjoin, was unauthorized and should have been enjoined. The question does not involve the exercise of the corporation function by a corporation, but relates to an alleged power conferred upon individuals to control a corporation. It was asserted that the charter of the corporation conferred upon the individuals who applied for it the power to retain supreme control over the internal affairs of the institution until there should be a meeting of the Eminent Household. The charter does not purport to have been granted by the legislature, but by the secretary of State under the provisions of an act of the legislature approved December 18th, 1893 (Acts 1893, p. 73 (Civil Code, § 2007 et seq.)), and the amendatory acts. The petition for charter recited, among other things, that it was desired that the petitioners for incorporation, their associates and assigns,

should retain such power over the corporation as has been referred to, and the certificate issued by the secretary of State purported to have conferred that power. It was contended, on the one hand, that this alleged delegation of power was futile and of no effect, because it was unauthorized by the constitution or any act of the legislature. On the other hand it was contended that it was a valid conference of power upon the incorporators. In support of this latter contention it was urged, that, while not otherwise expressly provided for by law, the recital of power in the petition for incorporation, sanctioned by the secretary of State, amounted to a specification and limitation which was not inconsistent with the general provisions of the law, but, being consistent with the general law, it became ef- fective as a charter power, the same as if the corporation had been created by an act of the legislature and the power had been expressly conferred by a legislative act. We can not concur in this view. For many purposes, and with respect to many corporate powers which a corporation might exercise, a charter for certain corporations may be issued by the secretary of State under our constitution and statutes; but to pursue further discussion with regard to that subject is to wander away from the question in the present case, which relates, not to powers to be exercised by a corporation, but specifically to the power of individuals to exercise control over a corporation after it has been organized. A corporation is a creature of the law. Civil Code, § 1802. It can not be brought into existence except as a result of express legislation. The conference of power upon persons to organize a corporation is legislative in character, and must be done 'by direct legislation, or be founded upon legislative or constitutional provisions. To authorize the incorporators, as such, to reserve power of control over the affairs of the corporation, after it has become an entity, stands upon the same footing. In the absence of special legislative limitation, a corporation should be under the control of all its members. There is no statute in this State which confers upon the incorporators the power, or authorizes the power to be conferred.upon the incorporators as such, to exercise supreme power of control over the corporation after it has been created. It is urged that the secretary of State has been vested with such power by the legislature, except in such instances where the power may be in conflict with the general law; but this position is untenable. The secretary of State of course

would not have a power which the general law prohibited; but to confer upon the incorporators such power as is contended for in this case is a legislative function and can not be exercised by that official under the constitutional provisions hereinafter. referred to, whether the general laws expressly forbade it, or whether they were merely silent upon the question. The control of the corporation, after its organization, by the individuals who petition for its charter is not a necessary, but an unusual power. One provision of the constitution of this State is: "The legislative power of the State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives." Civil Code, § 5744. Another provides: "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." Civil Code, § 5720. Under these provisions of the constitution, the legislature alone can confer a power which requires legislation to authorize it. The secretary of State could not confer it alone or concurrently with the individuals who might apply for a charter.. Another provision of the constitution declares: "The General Assembly shall have no power to grant corporate powers and privileges to private companies, to make or change election precincts, nor to establish bridges or ferries, nor to change names of legitimate children; but it shall prescribe by law the manner in which such powers shall be exercised by the courts. All corporate powers and privileges to banking, insurance, railroad, canal, navigation, express, and telegraph companies shall be issued and granted by the secretary of State in such manner as shall be prescribed by law; and if in any event the secretary of State should be disqualified to act in any case, then in that event the legislature shall provide by general laws by what person such charters shall be granted." Civil Code, § 5780. This is to be construed in connection with the other provisions of the constitution to which reference has been made, and should not be held to confer authority upon the secretary of State to exercise such a legislative function as granting special authority to incorporators, as such, to control a corporation after it has been created. The petition expressly alleged that the Eminent Household of Columbian Woodmen was duly chartered and organized, and the answer expressly admitted these allegations. These were solemn ad-

missions in judicio, which the parties would not be heard to deny, even if they had contended in argument that there was an issue upon that subject. It appears that the petitioners for charter formally accepted it in 1903, a few days after the certificate was issued by the secretary of State, and while they constituted, so far appears from the record, its sole membership, enacted by-laws, elected officers, and organized the Eminent Council, which under the by-laws had authority to make contracts, conduct all of the business of the corporation, and exercise supreme legislative and judicial control over the corporation while the Eminent Household was not in session; and under administration of the Eminent Council, of which all the incorporators were its first members, the corporation was launched into business, which was continued under the administration of the Eminent Council for a period of six years, during which time it had acquired a membership approximating fifteen thousand and assets valued at about $250,000. After all of this had been done, it was contended in 1909 that the authority of the original incorporators to organize had not been terminated, because they had not formally surrendered the corporation to its stockholders. The history of the organization above recited completely answers the contention. The organization of the corporation was complete without the added formality of a declaration to that effect to be made to the Eminent Household. For the reason indicated, there was no authority of law for the petitioners for incorporation, in 1909, to take legislative control of the corporation. It follows that the defendants named in the original petition were unauthorized to do the things complained of, and should have been enjoined.

On the prayers of the answer in the nature of a cross-petition the court enjoined L. T. Binford from assuming to exercise the duties of Viceroy or Eminent Consul, and restrained the other parties defendant to the cross-petition from interfering with the performance of duties of Eminent Consul by J. B. Frost. The other prayers for injunction in the cross-petition were not passed on by the judge and are not before us. In view of the ruling announced in the first division it is unnecessary to enter into an extended discussion of the case under the assignment of error which complains of the injunction against L. T. Binford and his associates. The record discloses that they were officers of the order, formally elected by the Eminent Council in accordance with the constitution and by-

laws formally adopted by the original incorporators at the time of the organization of the corporation, as afterwards amended according to the rules contained in the original by-laws providing for their amendment. It also shows that the things complained of in the answer in the nature of a cross-petition were being done by them in the exercise of official authority conferred by the constitution and by-laws. There was no dispute of fact involved, the controlling question being as to their authority to do the things which they were attempting to do. As they were acting within the limits of their authority, it was erroneous to enjoin them.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Lumpkin, J., disqualified.*