## GRAHAM et al. v. EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN et al.

Under the pleadings and evidence in this case the court did not err in refusing to grant the injunction prayed for.

FEBRUARY 22, 1911.

Petition for injunction. Before Judge Bell. Fulton superior court. April 30, 1910.

John C. Graham, E. S. Perry, and R. D. Murphy brought their equitable petition against Peter F. Clarke, J. G. St. Amand, P. E. Murray, L. P. Binford, E. E. Temple, W. A. Jackson Jr., George W. Clayton, J. B. Frost, C. M. Hitch, and the Eminent Household of Columbian Woodmen, a corporation chartered under the laws of Georgia, and hereinafter referred to as the corporation, or the order. Copy of the petition for incorporation and of the certificate of the secretary of State is attached. The corporation is a fraternal insurance company, without stockholders in a technical sense, and issues to its members policies of insurance; the supreme authority and control of the order are vested in a supreme lodge known as the Eminent Household; petitioners are holders of policies of insurance issued by the corporation, and each of them has been elected a delegate from a subordinate jurisdiction to the supreme lodge or Eminent Household; they instituted this suit as policyholders and delegates on behalf of themselves and all other persons holding policies of insurance in the order. The certificate of the secretary of State, incorporating the order, was issued on August 24, 1903. Thereafter the persons named as incorporators in the petition for incorporation met and adopted a constitution and by-laws, which provide, in paragraphs 1 and 2 of section 1 of article 3, as follows: "In the Eminent Household shall be the chief legislative and judicial administration and control of the affairs of the Fraternity. Its jurisdiction and powers shall be supreme. Said jurisdiction and powers shall be vested in the Eminent Council when the Eminent Household is not in session. The Eminent Council shall be the executive body of the Fraternity. The officers shall be Eminent Consul, Eminent Director General, Eminent Banker, Eminent Physician, Eminent Cardinal, and Eminent Counsellor, who shall constitute the Eminent Council; there shall be Ritual officers as follows: Eminent Pilot, Eminent Picket, Eminent Guardsman, and

Eminent Herald. All of these officers, together with Households or Royal Households, as represented by their Heralds or Royal Heralds, shall constitute the Eminent Household which shall, after its first session, meet annually at such time and place as shall be determined at said first session." Article 23, relating to amendment of the constitution and by-laws of the order, is set forth in the opinion.

Subsequently the Eminent Council, assuming to have power to make amendments to the by-laws, so amended them as to abolish the offices of Eminent Director General and Eminent Counsellor and to create the positions of Eminent Clerk, Eminent Viceroy, and Eminent Auditor. The incorporators elected persons to fill said offices, with the exception of Ritual officers, who were not elected. Subsequently the Eminent Council amended the by-laws so as to abolish certain offices and create others, and so as to provide that the Eminent Council should have authority to fill vacancies and to elect the officers of that body. The personnel of the Eminent Council has changed from time to time, and vacancies therein have been filled by the remaining members of that body; there has never been a meeting of the policyholders of the corporation or any delegates selected by policyholders for the purpose of giving direction to the affairs of the corporation, and the officers of the corporation have derived no power or authority from the action of the policyholders; there has been no meeting of the Eminent Household for the transaction of business of the order, but heretofore the control and management of the order has been under a provisional government created by the incorporators. It is alleged, that the officers, recognizing that the organization of the corporation was merely provisional and that the law required that the permanent control be vested in the Eminent Household, issued a call, in the month of August, 1909, for the election of delegates, and provided and promulgated plans governing the election of such delegates to the Eminent Household; that ten delegates were elected, constituting the full number of delegates provided for in said call, and representing the entire membership of the corporation, and these delegates are the only persons who have ever received any authority from the membership of said corporation as a whole. Pending the election of delegates differences arose between the officers of the corporation composing the Eminent Council, and

factions were engendered; one of the factions was composed of J. B. Frost and C. M. Hitch; the other faction was composed of the other officers of the Eminent Council; and as a result of the election of delegates it developed that a majority of the membership of the order supported the Frost faction, the other being referred to as the Binford faction. The Eminent Household was called to meet on the 15th day of September, 1909, but on account of certain litigation between the officers of the order it was adjourned from time to time, finally to meet on April 6, 1910, and this would be the first meeting of the delegates of the policyholders. Petitioners further allege that when it was discovered that the majority of the delegates were opposed to the Binford faction and to the majority of the Eminent Council, the latter elected from their supporters four additional officers of the order, an Eminent Pilot, Eminent Picket, Eminent Guardsman, and Eminent Herald, making a total of eleven officers in all, where there were only ten delegates. By the creation of these new officers under a provision of the constitution and by-laws, which the petitioners insist is invalid, the Binford faction would have a majority in the Eminent Household; the election of the four ritual officers was illegal, and none of the officers can vote in the Eminent Household. It is insisted in the petition that if the Eminent Council possesses any power to create officers with the right to vote in the Eminent Household, and to pass by-laws to this effect, which petitioners deny, such a power can only be construed to be a power to make reasonable by-laws; that the action of the Eminent Council, providing for more officers in the Eminent Household than there are elected delegates, is unreasonable and arbitrary, and in effect denies to the members of the corporation the control of the order; that the action of the Eminent Council, in electing the four ritual officers and giving them the right to vote in the Eminent Household, is illegal for the further reason that it is no part of the power of the provisional government to elect such officers nor can such power be assumed by the Eminent Council by the mere passing of by-laws by that body; that the election of the ritual officers is part of a scheme of a majority of the Eminent Council to perpetuate themselves in office by placing in the supreme lodge more officers of their faction than there are elected delegates; that the officers heretofore named are threatening and preparing to attend the meeting of the Eminent Household, to as-

sume the right to vote therein as members, and to control the management of the Eminent Household; and that this proposed action is illegal, but it will be taken unless the court intervenes, and will cause great and irreparable damage and confusion and discord in the management of the order. The prayers are, that the defendants named as officers of the order be enjoined from participating in the meetings of the Eminent Household as members entitled to vote therein; that the corporation be enjoined from holding any meeting of its Eminent Household wherein any but delegates elected thereto shall participate by vote as members thereof; and that it be adjudged and decreed that any and all by-laws, rules, or resolutions adopted by the incorporators or the Eminent Council, purporting to give to members of the Eminent Council the right to participate by vote in the meetings of the Eminent Household, are null and void, and that any by-law or resolution of the Eminent Council seeking to give to the said Council or any member thereof the right to pass on the credentials of any delegate to the Eminent Household is null and void.

The defendants demurred generally, and filed their answer to the petition, admitting the general purposes of the corporation to be, with certain qualifications and additions not material to be here set forth, as stated in the petition. They allege and contend, that, under the charter and under the original constitution and by-laws adopted thereunder, the plan of said corporation provided for the creation of a representative body known as the Eminent Council, in which was to be vested the management and control of all the affairs of the corporation except at those times when the general convention, known as the Eminent Household, should be in session; that the charter of the corporation, having been duly granted, was accepted by the incorporators, and the corporation was duly organized, in the year 1903, for the prosecution of all purposes and the transaction of all business for which it was incorporated; that subsequently in that year all of the members of said corporation met and adopted a constitution and by-laws and elected officers and a board of Eminent Council, and from that time the complete control of all affairs of said corporation has been exercised by the Eminent Council and, through its authority, by the officers of the corporation; and that the election of officers by the Eminent Council was in the exercise of power vested in it by the valid provisions

in the charter, constitution, and by-laws. The defendants further set forth their contention as to the causes of the creation of factions, referring to the facts involved in the case of *Eminent Household of Columbian Woodmen* v. *Thornton,* reported in 134 *Ga.* 405. They deny any desire to take action contrary to the welfare and best interest of the order, and aver, on the contrary, a genuine desire to faithfully discharge the duties imposed upon them as a corporation and the officers thereof; and they deny that they are in any way responsible for the friction between the members of the order out of which the factions referred to have been formed. They charge that the Frost faction had endeavored to prevent said corporation and its legally constituted officers from discharging their duties and the functions for which they were created. They allege that the Eminent Council were in the exercise of their power in the creation of the ritual officers, and insist that the officers, including ritual officers, are eligible to membership in the Eminent Household and have the right to vote therein, under the charter and constitution and by-laws of the order. Numerous charges and counter-charges are contained in the petition and answer, which it is unnecessary here to set forth.

The petitioners filed an amendment setting forth other facts and excerpts from the constitution and by-laws on which they base their contention that the action of the Eminent Council in creating new officers and clothing the officers with the right to vote in the Eminent Household was illegal. Certain other parties, averring that they had been elected delegates from subordinate jurisdictions to the Eminent Household, intervened, adopting the allegations of the original petition. Defendants J. B. Frost and C. M. Hitch filed separate answers, in substance supporting the material allegations of the petition. The answer of Frost contains a recital of the history of the organization, and relates the causes of the friction and the building up of the factions already referred to. The defendants, except Frost and Hitch, answered the amended petition, setting forth in substance the provisions of the charter and the constitution and by-laws and amendments thereto upon which they base their contention that the action upon their part, at which the complaint of the petitioners is directed, is a legal and proper exercise of power and authority vested in them.

*Tye, Peeples & Jordan* and *Burton Smith,* for plaintiffs.

*Dorsey, Brewster, Howell & Heyman,* and *Smith, Hastings & Ransom,* for defendants.

BECK, J.   (After stating the foregoing facts.)

As will be seen by reference to the case of *Eminent Household of Columbian Woodmen* v. *Thornton,* 134 *Ga.* 405 (67 S. E. 849), and the statement of the issues involved in that case and the evidence introduced touching the issues arising there, the statement of facts as set forth there may be considered in connection with the preceding statement of facts made in the case at bar.   The former statement of facts throws additional light upon certain phases of the struggle between two factions in the order, which has culminated in a test of the right of the Eminent Council to elect certain ritual officers having the right to vote at the meeting of the Eminent Household.   As the constitution and by-laws of the order originally stood, paragraph 2 of article 3 was as follows: "The officers shall be Eminent Consul, Eminent Director General, Eminent Banker, Eminent Physician, Eminent Cardinal, and Eminent Counsellor, who shall constitute the Eminent Council.   There shall be Ritual Officers as follows: Eminent Pilot, Eminent Picket, Eminent Guardsman, and Eminent Herald.   All of these officers, together with Households or Royal Households, as represented by their Heralds or Royal Heralds, shall constitute the Eminent Household, which shall, after its first session, meet annually at such time and place as shall be determined at said first session."   And article 23 is as follows: "Amendments of the Constitution and By-laws can be made upon a favorable vote for such amendment by a majority of the Households voting upon the question, if such amendment be approved by the Eminent Council.   In the event of disapproval by the Eminent Council of a proposed amendment, notice thereof, with the reason for such disapproval, shall be sent to the Households within thirty days after such disapproval, but such amendment may nevertheless be made, by a favorable vote thereon, by two thirds of all the Households within thirty days after date of such notice.   The result of such vote shall be certified by the Worthy Consul and Worthy Clerk, and transmitted to the Eminent Consul, who shall lay the same before the Eminent Council, and it shall be the duty of the latter to declare the result to the Households and modify the Constitution and By-laws accordingly.

Amendment of this Constitution can also be made by the Eminent Council or by two-thirds vote of the Eminent Household."

Subsequently, on November 11, 1904, the Eminent Council directed an application for an amendment of the charter of the Columbian Woodmen, so that paragraph 4 of the charter would read as follows: "The Eminent Household shall be composed of its officers as honorary members without vote, except in the case of an equal division the Eminent Consul, being the presiding officer, shall have power to cast the determining vote, and the delegates or Heralds from the Households or Royal Households." And it appears that on December 15, 1904, an amendment to the charter in the language just quoted was granted by the secretary of State. On June 5, 1909, another amendment to the charter was granted by the secretary of State, striking the amendment of December 15, 1904, above set forth. Shortly after the amendment to the charter of December 15, 1904, the by-laws of the order were amended so that "Paragraph 2" (article 3), which defined the membership of the Eminent Household, closed with the following language: "but the Eminent Officers shall be without vote, except that in case of an equal division the Eminent Consul may cast the determining vote." And on August 26, 1909, "Paragraph 2," last referred to, was amended by striking out this last-quoted amendment to the constitution and by-laws, leaving the provisions of "Paragraph 2," which defines who should constitute the Eminent Household, as it stood originally in the constitution and by-laws.

1. It is unnecessary for us to consider the question whether or not the secretary of State had the authority to grant an amendment to the charter of the order, containing the provision limiting and defining the rights of the officers as members of the Eminent Household as it is expressed in the amendment of December 15, 1904; because the provisions of that amendment were annulled by the amendment of June 5, 1909. The secretary of State had the same authority to grant the second one of these amendments as he had to grant the first, and the Eminent Council, as appears from the entry on the book of minutes of that body, struck from the constitution and by-laws the provision which had there been inserted after the grant of the amendment to the charter of December 15, 1904, to the effect that "the Eminent Officers shall be without vote, except that in case of an equal division the Eminent

Consul may cast the determining vote." We do not think, however, in view of the limited powers of the secretary of State and the character of his duty in reference to the granting of charters, that either of the amendments, so-called, to the charter should be treated as having effect other than as a part of the constitution and by-laws of the order properly adopted. See, in this connection, the case of *Eminent Household* v. *Thornton,* supra. When the provisional organization and control of the order passed from the incorporators, as it did when they met and accepted the charter and adopted a constitution and by-laws providing for the election of Eminent officers and of the Eminent Council, the Eminent Council became vested with all the power and authority that could be legally conferred upon them by the constitution and by-laws adopted. One of the original by-laws, after providing that the Eminent Household should have the chief legislative and judicial administration and control of the affairs of the order, and that its jurisdiction and powers should be supreme, declared that "said jurisdiction and powers shall be vested in the Eminent Council when the Eminent Household is not in session." Another, after providing how amendments could be made to the constitution and by-laws by certain bodies known as Households, also provided that "Amendment of this constitution can also be made by the Eminent Council, or by two-thirds vote of the Eminent Household." The original constitution and by-laws were adopted immediately after the acceptance of the charter by the incorporators, who constituted the entire membership of the order at that time. Under the provisions of the original constitution and by-laws the Eminent Council was created and organized. In the election of the ritual officers, whose election has given rise to this action, the Eminent Council did nothing more than to fill offices which were expressly provided for in the original constitution. The evidence as to whether there was a necessity to fill these offices before the meeting of the Eminent Household was conflicting. But, even in the absence of evidence upon that question, it would seem that the Eminent Council, when we consider the broad powers conferred upon them by the constitution relative to the order, were in the exercise of a right plainly within the purview of the constitution which called them into being.

But it is also insisted by the petitioners, who contest the right of

the Eminent Council to elect the ritual officers in question and to confer upon them the power to vote in the Eminent Household, that if there is provision made for this in the constitution and by-laws, such a provision is null and void as contrary to the policy of the law; because, under the law relative to fraternal beneficiary orders similar to this, the government should have a representative form; and that if these ritual officers and the other officers of the order are permitted to vote at the meeting of the Eminent Household, self-elected and self-selected officers will be in the majority and can control the action of the Eminent Household and override the will of the elected delegates; and that to carry out the provisions of the law relative to these fraternal beneficiary orders the control of the order should devolve upon the elected delegates solely, or at least that the Eminent Household should be so constituted that the elected delegates would be in the majority. In one or more of the States having laws relative to the formation and control of fraternal beneficiary societies the statutes do expressly make provision that the elected delegates to the supreme body of the order shall be in the majority. Our statute on the subject does not contain this express provision, but defines a fraternal beneficiary order to be "a corporation, society, or voluntary association which has no capital stock, . . and having a representative form of government and a lodge system," etc. The act then provides: "Such grand or supreme bodies may be composed of its officers, incorporators, representatives elected by local, district, or grand bodies, past officers, and standing committees. Such orders or associations may make a constitution, by-laws, rules and regulations consistent with the existing laws of the State, for the government of all under its authority, for the management of its properties and the due and orderly conduct of its affairs." Acts 1900, p. 71. In view of the provision that the "supreme bodies" of these orders may be composed of its officers, past officers, and standing committees, as well as representatives elected by local bodies, and that such orders may make a constitution and by-laws consistent with the existing laws of the State, for the government of the order, and that no limitation is put upon the number of officers or of the past officers and standing committees who may thus become members of the supreme legislative and judicial bodies within the order, we do not think, because the elected dele-

gates to the Eminent Household are not equal in number to the number of Eminent officers attending the meeting as constituent members, that such a body fails to conform to the provisions of the statute. Nor do we think that changes in the constitution and by-laws with reference to the constituent elements of the supreme legislative body of the order, such as the creation of ritual officers and giving to the officers a vote in the meetings of the supreme body, violate any of the stipulations in the policies of the members of the order or affect the vested interests of such policyholders.

*Judgment affirmed. All the Justices concur.*