## EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *et al.* *v.* THORNTON *et al.*

The defendants, in an application by a corporation for injunction, filed an answer and cross-petition wherein they sought to make certain alleged officers of the corporation parties, and prayed an injunction to prevent them from doing specified acts; and the judgment of the trial judge upon an interlocutory hearing, refusing the application of the plaintiffs for injunction and granting that of the defendants, was reversed by this court. The trial judge entered an order making the judgment of this court the judgment of the lower court, "without prejudice to the right of defendants, or either of them, to amend their pleadings and present such additional prayers for relief as they may desire." Subsequently one of the defendants filed an amendment to the original answer of the defendants, "in the nature of a cross-petition," seeking to enjoin those made parties upon the original answer from doing acts against the performance of some of which an injunction was sought by the defendants in the original answer. To the order of the court granting the second injunction the plaintiffs excepted. *Held:* It appearing that the facts constituting the grounds upon which the second injunction was granted were in existence and known to the defendant applying for the second injunction at the time the first injunction was granted, as to the acts against the performance of which the first injunction was sought the grant of the second injunction was error, no sufficient reason appearing why such grounds were not urged upon the hearing of the application for the grant of the first injunction.

(a) The fact that the applicant for the second injunction was a defendant in an application for injunction against him and others, and that the hearing of the applications of the plaintiffs and defendants was had on the morning of the day after the application of the plaintiffs was filed, and that all parties desired a hearing of their respective applications prior to the happening of an event in which they were interested and which was scheduled to occur that day, affords no sufficient reason why the grounds for the second injunction as to the acts above referred to

were not urged upon the hearing of the defendants' application for the first injunction.

(b) With respect to the court's action in impounding certain funds and restraining their disposition, the court committed no error other than that which is pointed out in the opinion.

FEBRUARY 22, 1911. REHEARING DENIED MARCH 4, 1911.

Injunction.    Before Judge Pendleton.    Fulton superior court. May 13, 1910.

A petition was filed in the name of the Eminent Household of Columbian Woodmen, alleged to be a "fraternal order incorporated by the State of Georgia," duly organized under a charter granted by the secretary of State.    The petition made, among others, substantially the following allegations: The corporation was duly organized, its charter accepted, and a constitution and by-laws were adopted for its government, a copy of which was attached to the petition.    The Eminent Council was duly elected and has continuously controlled the order.    L. T. Binford was duly elected "Eminent Viceroy and acting Eminent Consul."    He and other officers duly elected constituted the Eminent Council, which had full control of the order when the Eminent Household of the order was not in actual session, and the Eminent Council selected an Executive Committee, with authority to execute the business of the Eminent Council, as provided by the articles of incorporation. A meeting of the Eminent Household has been called for noon, December 15, 1909, and delegates thereto elected.    On account of charges against the official conduct of J. B. Frost, pending the investigation of such charges he has been suspended as Eminent Consul by the Executive Committee.    A statement of these charges was detailed in the petition, one of which was that he used his official position as a cloak for effecting an unconscionable contract with the order, without the knowledge of the Eminent Council, an enforcement of which would be a legal fraud.    The action of the committee being reported to the council, the latter confirmed the same, and suspended Frost as Eminent Consul and from exercising any privilege as an official of the order.    Frost, anticipating investigation by the council and by the household when it convened, for the purpose of defeating action by them against him, called a meeting of the incorporators (of which he was one) to be held on December 11, 1909.    At said pretended meeting of the incorporators only two of those present were members of the order in good

standing.   The incorporators passed resolutions electing additional delegates to the household and additional members of the council, so as to give the additional members illegally elected a majority vote and thereby control the action of the council.   The defendants appeared at a meeting of the Eminent Council and claimed to be members thereof, which claim and action are based on a conspiracy to take control of said order out of the hands of its officers and duly selected Eminent Council, and prevent an investigation of  the official conduct of Frost and illegally perpetuate his administration as Eminent Consul.   Plaintiffs prayed an injunction against the defendants from attending or endeavoring to participate in any of the meetings of the committee, council and household, and from enforcing any action that may have heretofore been taken by the alleged meeting of the original incorporators.

The defendants in their answer made, among others, substantially the following allegations: The real parties filing the petition were L. T. Binford, Peter F. Clarke, J. G. St. Amand, and P. E. Murray; and it was prayed that they be made actual parties in this litigation.   They had no right to use the name, or to represent the Eminent Household of Columbian Woodmen in bringing the suit, but such right exists in the defendants, and it was prayed that the same be accorded them.   The power of the incorporators did not terminate upon the election of the Eminent Council by them in 1903.   The council has no right to make a constitution and by-laws, but such right exists in the household, and until a meeting of the household has been held the authority to perform all of its duties, including the right to legislate and the right to elect officers of the order, is conferred upon the incorporators by the articles of incorporation.   No meeting of the household has yet been held. Frost has given all of his time to the work of the order for the past six years without receiving therefor any compensation.   A few weeks ago Frost cancelled the contract he had with Binford, which has caused the differences between him, Binford, and the others, who are the real plaintiffs in the case.   The majority of the delegates to the household to meet on the 15th of December, 1909, were favorable to Frost.   Seeing that their effort to control the household was futile, a proposition was made to Frost, in the presence of Binford, Murray, and St. Amand, at a meeting of the Council, that if Frost would agree to support them for re-election, they

would agree to support him for re-election, which was declined. A day or two later Binford and others, at a meeting of the council, passed resolutions postponing indefinitely the meeting.of the household, which was to occur on December 15, 1909. Binford and others undertook to elect additional persons who were under their influence as officers of the household, for the purpose of controlling the action of the same, and then revoked the order postponing the meeting of the household. It was under these circumstances that a call for a meeting of the incorporators was made. Five of the seven original incorporators were present at the meeting. At this meeting the constitution and by-laws were amended so as to provide that neither the council nor the committee should have the power to amend the constitution and by-laws of the order, or remove a member or officers thereof from membership or from office, and creating seven additional directors, who were to constitute the Advisory Board of the Household and were to be members of the Eminent Council, and providing that the incorporators should elect the directors until their successors were elected and qualified. "The call for the meeting of the' Eminent Household, to take place December 15th, 1909, at 12 o'clock, was ratified, and thereupon the incorporators elected Hoke Smith, W. F. Manry, E. H. Thornton, J. T. Daniel, L. I. Denson, Samuel W. Joyner, and J. W. Armistead Eminent Directors and members of the Advisory Board. The election of J. B. Frost as Eminent Consul was ratified, and he was made by the incorporators the Eminent Consul until his successor was elected and qualified. This meeting and action of the incorporators took place on December 11, 1909. The defendants show that any subsequent effort of Messrs. P. E. Murray, Peter F. Clarke, J. G. St. Amand, and L. T. Binford to suspend J. B. Frost, was illegal and unwarranted, as they were members of a subordinate body of the association and could not override the action of the incorporators acting as the Eminent Household. At a subsequent duly called meeting of the incorporators on December 13th, 1909, the action of the Eminent Council, or those claiming to be the Eminent Council, in creating the office of Eminent Viceroy was disapproved, said action was revoked, and the office, if legally created, was abolished. The action of Messrs. P. E. Murray, J. G. St. Amand, L. T. Binford, and Peter F. Clarke in endeavoring to suspend J. B. Frost was disapproved, and said J. B.

Frost was declared to be vested with the full power and authority
of Eminent Consul. The action of said Binford, St. Amand,
Murray, Penn, and Clarke, in endeavoring to disregard the action
of the incorporators acting as the Eminent Household, was dis-
approved, and any and all action which they may have taken in
their illegal meeting was also disapproved." The prayers of the
answer and cross-petition of the defendants were as follows: "De-
fendants waive discovery, and respectfully petition the court that
the said L. T. Binford, J. G. St. Amand, Peter F. Clarke, and
P. E. Murray be made parties to this litigation and that the said
parties be enjoined and restrained from in any wise interfering
with the lawful action taken by the incorporators or which may be
hereafter taken by the incorporators or by the Eminent Household
of this order, or from interfering in any way with the performance
of the duties of such officers as may hereafter be chosen by the
Eminent Household; and that the said L. T. Binford be especially
restrained and enjoined from assuming or attempting to perform
any duties or functions of an officer in the Columbian Woodmen
under his claim of being the Eminent Viceroy of the Eminent
Household of Columbian Woodmen, and that he be enjoined and
restrained from in any wise interfering with J. B. Frost in the
performance of his functions and duties as Eminent Consul, or
from performing or attempting to perform by him, the said L. T.
Binford, any of the duties incident to the office of Eminent Consul.
Defendants further petition the court that J. G. St. Amand, Peter
F. Clarke, and P. E. Murray be enjoined and restrained from at-
tending the Eminent Household of Columbian Woodmen, and from
undertaking to participate therein as members thereof." There
was also a prayer for general relief.

Upon an interlocutory hearing the trial judge, on December 19,
1909, denied the injunction prayed for by the plaintiffs, and or-
dered that "The injunction prayed for in the cross-petition, re-
straining L. T. Binford from assuming to exercise the duties of
Viceroy or Eminent Consul, and restraining the other parties de-
fendant to the cross-petition from interfering with the perform-
ance of the duties of Eminent Consul by J. B. Frost, is granted."
The plaintiffs filed a bill of exceptions to this order; and this court
reversed the judgment of the court below, "because the court erred
in granting an interlocutory injunction on the cross-petition and

refusing to enjoin the defendants in the original petition." When
the remittitur from this court was sent to the lower court an order
was entered thereon, on May 2, 1910, making the judgment of this
court the judgment of the lower court, "without prejudice to the
right of defendants, or either of them, to amend their pleadings
and present such additional prayers for relief as they may desire."
Frost filed an amendment to his answer "in the nature of a cross-
petition," on May 6, 1910, making, among others, substantially the
following allegations: The decision of the Supreme Court and of
the lower court in this case involved alone the question as to
whether the incorporators or the council had authority to control
the affairs of the household. A by-law of the order in force at the
time of the attempted suspension of the defendant provided that
the household shall be the judge of the election and qualification
of its officers and members, and may by itself, or through its coun-
cil, suspend any member or officer for cause. The attempted sus-
pension of the defendant took place on the 13th of December, 1909,
when the household was to meet on the 15th of that month. There
was no cause for his suspension, and he was never served with a
copy of any charges or causes for his suspension, and the parties
undertook to effect his suspension without giving him any notice
or hearing. The attempted suspension of the defendant by Bin-
ford and others was a part of their plan to control the household
and prevent defendant from exercising the authority vested in him
as consul at the meeting of the household. This attempted suspen-
sion was an exercise of authority in bad faith with the order and
in disregard of the rights of the defendant. Defendant holds a
contract with the order, dated August 2, 1904, binding on the order
until December 31, 1919, giving the defendant certain rights and
providing for his compensation from the field fund and fees of the
order, giving him a certain amount of the fees paid by members for
a certain period. Since the execution of the contract he has given
his entire time to the performance of his duties thereunder, but has
received no compensation for his services, nor has he received what
is due him up to this time under said contract. To allow such sus-
pension to stand would demoralize the force engaged in the work
provided for under the contract, and would cause irreparable injury
to him and to the order. There is on hand approximately $20,000
in cash from the field fund and other income of the order, covered

by defendant's contract, which belongs to him and which can not be used for any other purpose, and the order is without other resources with which to meet its obligations to him. The prayer of the amendment was: "Wherefore this defendant prays that Messrs. L. T. Binford, P. E. Murray, J. G. St. Amand, Peter F. Clarke, and J. E. Penn, whether acting as a majority of the Eminent Council of Columbian Woodmen or acting as such in the name of the order, be enjoined from undertaking to enforce their effort to suspend this defendant from the exercise of the duties of Eminent Consul of the Eminent Household of Columbian Woodmen, and that they further be enjoined from using any of the fund hereinbefore referred to which has already accumulated or which may hereafter be collected for any purpose, except to settle with this defendant the amounts due him under his contract hereinbefore set forth, and that they be enjoined from endeavoring to change the present status of the management of the affairs of the Eminent Household of Columbian Woodmen until the meeting of the Eminent Household. This defendant further prays for a temporary restraining order restraining said parties as above set forth, and for such other and further relief as may to the court seem meet and proper." The trial judge, on May 2, 1910, granted a rule nisi, requiring the defendants to show cause why the prayer of the amendment should not be granted, and granted a temporary restraining order on this amendment and cross-petition of Frost. The Eminent Household of Columbian Woodmen, Binford, and others against whom relief is prayed in the amendment filed a motion to strike said amendment, and also filed a demurrer and answer thereto. Among other things, it was set up that the matters upon which Frost sought to invoke the action of the court were adjudicated by the former decision in the case.

Upon the hearing the court granted a decree as follows: "The above case coming on to be heard on the amended answer in the nature of a cross-petition of J. B. Frost, and evidence having been introduced and argument of counsel had, it is ordered, that, pending this litigation and until further order of the court in this case, the defendants to the cross-petition, to wit, J. G. St. Amand, Peter F. Clarke, P. E. Murray, and Lloyd T. Binford, be and the same are enjoined and restrained from interfering with the performance by J. B. Frost of the duties of Eminent Consul as prescribed by his

contract of date August 2nd, 1904; and it is further ordered that said parties be restrained from suspending or removing said J. B. Frost from said office on the charges referred to in the pleadings or evidence presented in this case; and it is further ordered that said parties be restrained from changing the present status of management of the affairs of the order in so far as the same would affect the rights of the said Frost under the said contract; provided, however, this order shall not be construed as abridging the power of the Eminent Council from amending the constitution or by-laws of the order in any respect except in so far as such amendments might affect the rights of the said J. B. Frost under said contract. It appearing to the court that the corporation has on hand a large sum of money viz., $20,000.00, arising from membership fees paid when members joined, and from installments on account of the field and promulgation fund, and from installments on account of the general expense fund, and it further appearing to the court that the fund derived from membership fees and from the first, second, and third year payments on the field and promulgation fund has been overdrawn on account of general expenses to a greater amount than the portion of the said $20,000.00 arising from the general expense fund, it is therefore further ordered that the said sum of money now on hand as heretofore stated, viz., $20,000.00, be and the same is hereby impounded by the court. The said funds are permitted to remain in the possession of the Eminent Banker, and he is ordered to hold the same subject to the order of the court, and is enjoined from disposing of the same. The court further orders that installments from now on coming into the hands of the corporation, from membership fees paid when members join and from payments on field and promulgation funds for the first, second, and third years, be and the same are, as they are received by the corporation, impounded by the court. The said funds are permitted to come into the hands of the Eminent Banker and to be retained by him; but he is, however, ordered to hold the same subject to the order of the court, and is enjoined from disposing of the same except upon the order of the court or as herein provided. It is further provided that out of said fees and installments of field funds, payments may be made to the Consuls General and to the Deputy Consuls General, they being the men engaged in the field service, of such amounts from time to time as may be due them out of said funds under their

contracts. The amount hereafter received from installments to the expense fund is not impounded. It is further provided that nothing in this order shall be construed to prevent the said corporation or its officers from paying to J. B. Frost the amount or amounts due him out of the sum now on hand heretofore referred to, or the future installments and fees heretofore described; but the payment to the said Frost is not made obligatory by the terms of this order but merely permissive, it being the purpose of this order as an interlocutory order only to require the preservation of the present status. This the 13th day of May, 1910." To this order the defendants in the cross-petition filed their exceptions. (Wherever in this statement of facts, or in the opinion, reference is made to the "household," and "council," or the "consul," these terms are to be understood as designating what is known, respectively, in the nomenclature of the order as the Eminent Household, Eminent Council, and Eminent Consul.)

*Dorsey, Brewster, Howell & Heyman,* for plaintiffs in error.

*Smith, Hastings & Ransom,* contra.

HOLDEN, J. (After stating the foregoing facts.)

The Eminent Household of the ﹨Columbian Woodmen, a fraternal order holding a charter from the secretary of State, in its petition against J. B. Frost and others, alleged that the Executive Committee and the Eminent Council of the order had suspended Frost from the office of Eminent Consul, because of certain charges against him; and prayed that Frost and the other defendants be enjoined from participating in any meeting of the committee, council, or household of the order. Frost and the other defendants made in their original answer, among other allegations, the following: The council had no authority to suspend Frost, or to amend the by-laws or constitution of the order, but the authority to do these things was in the original incorporators, who had all the authority of the household before its first meeting, and the household had never met. At a meeting of Frost and other incorporators, **the action of the council in** suspending Frost, and its action in other respects, were disapproved and declared illegal, and Frost was declared to be invested with full power and authority of the Eminent Consul. The answer to this petition, filed by all of the parties defendant, prayed that Binford and others, claiming to constitute the council, be made parties, and that they be enjoined

from interfering with the action taken by the incorporators, and that Binford, elected Viceroy and acting Consul by the Council, be enjoined from performing any duties incident to the office of consul and from interfering with Frost in his performance of the duties of consul. The plaintiffs excepted to the order of the trial judge refusing the application of the plaintiffs and granting the prayers for injunction contained in the answer and cross-petition of the defendants. This court, in a decision reported in 134 *Ga.* 405 (67 S. E. 849), reversed the judgment of the trial judge, "because the court erred in granting an interlocutory injunction on the cross-petition and refusing to enjoin the defendants in the original petition." On the remittitur from this court, the court below entered a judgment making the judgment of this court its judgment, "without prejudice to the right of defendants, or either of them, to amend their pleadings and present such additional prayers for relief as they may desire." After this judgment was entered, Frost filed an amendment to the original answer made by him and the other defendants in the nature of a cross-petition, alleging, among other things, that he had a contract with the order as consul whereby for certain services he was to have a specified part of certain fees to be paid by members until December 31, 1919; that the effort to displace him as consul was not in good faith; that there was no cause for his suspension, and it was sought to be effected without any notice to him and without giving him any opportunity to be heard, and that his attempted suspension was otherwise illegal and without authority. Frost also prayed that certain funds in the hands of the order be impounded. The trial judge granted an injunction against the suspension or removal of Frost and against other named acts of the defendants to the cross-petition and impounded certain funds claimed by Frost to belong to him under his contract. To this order the plaintiffs in error excepted.

One of the main contentions of the plaintiffs is, that the application of Frost for the last injunction was an application for a second injunction to restrain the same acts which the application in the original answer and cross-petition of Frost and others sought to enjoin, and, being based on facts in existence and known to Frost when the first application was made, the same should not have been granted. We think that this contention is sound, and that the court erred in granting the last injunction. In the original answer

of Frost and others it was alleged that the action of the Council in suspending Frost was illegal, and that the power of amending the constitution and by-laws and suspending members or officers was vested alone in the incorporators until the household met, and that the latter had never convened. It was further alleged that the incorporators had by resolution declared the action of the council in suspending Frost to be illegal and had declared him to be vested with the power of consul, and prayed that Binford and others be enjoined from interfering with the action of the incorporators. The effect of granting this prayer of Frost and the other defendants was to enjoin Binford and others claiming to be the council from suspending Frost or interfering with him as consul; and the injunction granted by the trial judge, restraining Binford from assuming to exercise the duties of Viceroy or Eminent Consul and restraining the other parties defendant from interfering with the performance by Frost of the duties of Eminent Consul, had this effect. The act sought to be enjoined in the original answer, and the one that was actually enjoined thereunder, was one of the same acts sought to be enjoined in the amendment, wherein it was prayed that Binford and others "be enjoined from undertaking to enforce their effort to suspend this defendant from the exercise of the duties of Eminent Consul." The opening sentence in the statement of facts in the report of this case in 134 *Ga.* 405 (on p. 406), is as follows: "The case involves a contest over the right of J. B. Frost and others, who are named as defendants, on the one hand, and L. T. Binford and others, who were made parties by the cross-petition, on the other hand, to participate in the control of a certain institution known as the Eminent Household of Columbian Woodmen." In the opinion (pp. 413, 414), it was said: "For the reason indicated, there was no authority of law for the petitioners for incorporation, in 1909, to take legislative control of the corporation. It follows that the defendants named in the original petition were unauthorized to do the things complained of, and should have been enjoined. . . It also shows that the things complained of in the answer in the nature of a cross-petition were being done by them [Binford and other members of the Council] in the exercise of official authority conferred by the constitution and by-laws. There was no dispute of fact involved, the controlling question being as to their authority to do the things which they were attempt-

ing to do. As they were acting within the limits of their authority, it was erroneous to enjoin them." The decision in 134 Georgia only decided that the council and not the incorporators had the right of suspension of officers and the administrative and legislative control of the order until the Household met. Considering that the only question involved in the case as it there appeared before this court was whether the council or the incorporators had the control of the order with reference to the matters involved in the case (one of which involved the power to suspend an officer), this court held that such control and power was not in the incorporators, but was in the council. The question whether the power to suspend Frost, and other powers, were in the incorporators, or in the council, was considered the only one made, and was the only one decided in that case. It was there considered that Frost and his codefendants did in their original answer and cross-petition seek to enjoin the council from suspending him on the ground that the council had no such authority, but that power existed in the incorporators. If Frost could, after the decision of this court, amend his answer and file a cross-petition asking that if the council and not the incorporators had the power of suspending him from office, its action in undertaking to do so be declared illegal, and the members of the council be enjoined because of his contract and because the attempted suspension was without notice to him or a hearing being accorded him, and for other reasons, he could have sought injunction on these grounds in the original answer and cross-petition filed by him and others and before the first injunction was granted by the trial judge. The facts on which he seeks the second injunction existed and were known to him when he filed his first application for injunction, and it was error to entertain and grant the second application against his removal or suspension. In this connection, see *Conwell* v. *Neal,* 118 *Ga.* 624 (45 S. E. 910); *Blizzard* v. *Nosworthy,* 50 *Ga.* 514, 520; 35 Cent. Dig., "Motions," section 53 et seq. In the case of *Savannah Railway Co.* v. *Postal Telegraph Co.,* 113 *Ga. 916* (39 S. E. 399), the court (on p. 919) said: "The right of the railway company to present a second application for injunction seems, under these decisions, to be unquestioned; but such an application is addressed to the discretion of the judge, which ordinarily should not be exercised in granting the second application, unless it is based upon grounds which were not known

and could not have been discovered by the exercise of reasonable diligence at the time the first application was made. Not only was every ground upon which the second application in the present case is based known to the railway company at the time the first application was made, but some of them were actually presented in the pleadings as reasons for granting an injunction, and there was an effort, though ineffectual, to present every question that is now presented. Under such circumstances the judge not only did not abuse his discretion in refusing the application, but the grant of an injunction would have been entirely unwarranted." Counsel for Frost urge that the discretion of the trial judge in entertaining and granting a second application of Frost should not be interfered with in this case, because he was the defendant in the litigation; and that while a plaintiff in beginning litigation asking for equitable relief is supposed to be fully prepared as to all matters involving his rights, a defendant is not presumed to be so prepared, but is only bound to prepare himself after the litigation is begun, and for the further reason that the hearing was had at eight o'clock the day after the application of the plaintiff was filed, in order that a hearing and an adjudication might be had before noon of that day —the time set for a meeting of the household. We do not think that these reasons are sufficient to authorize the grant of a second injunction. The defendant was not bound, on the interlocutory hearing, to ask for any affirmative relief in his answer to the attacks made by the plaintiff. When he asked that persons other than the original plaintiff be made parties and that they be enjoined, he and his codefendants stood in the attitude of plaintiffs seeking affirmative relief. If he was not ready for a hearing at the time fixed, he should have asked that the hearing be deferred in order that he might have more time within which to prepare for trial.

The contract between the Eminent Household of Columbian Woodmen and J. B. Frost, a copy of which was attached to the original petition and to the amendment of Frost to the original answer, provided, among other things, the following: The order contracts with Frost "to perform the duties placed upon the Eminent Consul," as they now or may hereafter exist under the constitution and by-laws of the order, part of which duties were set forth. It was recited, that, according to the constitution and by-laws, each

member admitted to the order has to pay "a membership fee of four dollars, and afterwards he is to contribute to the field work and promulgation fund one dollar per month for twelve months during the first year of his membership, seventy-five cents per month during the second year of his membership, fifty cents per month during the third year of his membership, and twenty-five cents per month during the fourth year of his membership. The payments thus to be made are known as the field work and· promulgation fund. Out of this fund is to be paid such sums as by contract are allowed to consuls-general engaged in field and promulgation work, who have been employed and commissioned under the conditions herein prescribed, and to local men who may be employed to increase the membership of households, or to households for such work." In consideration of services previously rendered and to be rendered in the future by Frost, and other considerations, including "the performance of the duties under this contract," the contract provided: "After deducting the charges placed upon the membership fees and the field and promulgation fund in this manner, the party of the first part hereby agrees that the said J. B. Frost shall receive as compensation all of the said entrance fees and all of the field work and promulgation fund from each guest during the 1st, 2nd, and 3rd years of his membership; that is, $1.00 per month for· twelve monthly installments, seventy-five cents per month for the next twelve monthly installments, and fifty cents per month for the next twelve monthly installments." The contract was dated May 2, 1904, and was to be binding until December 31, 1919. The contract provided that each member admitted to the order should pay a membership fee of $4, and should afterwards contribute to the field work and promulgation fund $1 per month for the first year after he became a member, 75 cents per month during the second year, and 50 cents per month during the third year, and that after deducting certain charges placed upon such fees and fund, Frost was to receive as compensation all of such fees and fund. If this contract should on a final trial be upheld, after deducting the charges placed on the fees and funds paid by members procured under the contract by Frost prior to his suspension from office, he would have such an interest in the remainder of the fund arising from membership fees and fees paid by such members to the field and promulgation fund during the first three years of

membership as to warrant the action of the court in impounding and enjoining the disposition of the funds received by the order from this particular source. The contract appears to be one with Frost as consul; and after he was suspended from that office and ceased to hold the same, he would have no right to perform the duties imposed upon him by the contract, as the right of Frost to perform the duties placed upon him by the contract was an incident to his continuing in the office of consul. As it was error to enjoin the suspension of Frost by the council, it was error to impound and enjoin the disposition of funds which would in future be paid by members whose membership in the order was procured after Frost was suspended from the office of consul. Whether or not Frost was entitled to an injunction to prevent interference with his holding the office and performing the duties of consul, and whether or not he was entitled to any relief with respect to future moneys received by the corporation on account of his contract with it, or with respect to any of the matters referred to in the second injunction granted, except that pertaining to the fund claimed to be on hand and to belong to Frost, are questions which are determinable alone from the pleadings and other parts of the record aside from the evidence; and with respect to these matters it is unnecessary to consider the evidence introduced upon the hearing. Our decision with reference thereto would be the same, even though we should disregard the evidence in the case, as requested to do by counsl for the defendants in error, on the ground that it is not properly briefed. To determine whether the court erred in impounding the $20,000 claimed by Frost to be on hand and to belong to him under his contract, and enjoining the disposition of this fund by the defendant, it is necessary to look to the evidence. Under the pleadings and the evidence, we do not think the court abused his discretion in impounding this fund and enjoining its disposition; but the court committed error in granting the other relief prayed for by the defendant Frost, except as to the impounding and as to the injunction against the disposition of the membership fees and the field and promulgation fund paid by members (referred to below) during the first three years after they were admitted (less the charges placed thereon under the terms of the contract) and received after the injunction was granted from members procured under the contract by Frost prior to his suspension from office. Direction is given that

the judgment of the lower court be so modified as to conform to this ruling.

*Judgment in part reversed, and in part affirmed, with directions. All the Justices concur, except Lumpkin, J., disqualified.*

ATKINSON, J.　I concur in the result, but think the construction placed on the former decision is too restrictive in its scope.